IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KIMBERLY J. TAYLOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | )  CIV-12-118-D |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff protectively filed her application for benefits on January 4, 2008. She alleged

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Carolyn W. Colvin is substituted for former Commissioner Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit. 42 U.S.C. §405(g).

that she was unable to work beginning March 31, 2006, due to cardiac, vision, hip, and shoulder problems, hand numbness, and Type I diabetes. Plaintiff was 41 years old when she sought benefits, and her insured status for Title II benefits expired on September 30, 2010. Her application was denied initially and on reconsideration. At Plaintiff's request, a hearing was held before Administrative Law Judge Gatewood ("ALJ") in July 2009 at which Plaintiff and a vocational expert ("VE") testified. (TR 20-60). The ALJ determined that Plaintiff was not disabled at step four of the governing five-step sequential analysis on or before September 30, 2010. (TR 11-19). See Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(explaining five-step evaluation)(quotations and citations omitted).

In her decision, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 31, 2006, the date she alleged her disability began. Following the well-established sequential evaluation procedure adopted by the agency, see 20 C.F.R. § 404.1520(b) - (f), the ALJ found at step two that Plaintiff had severe impairments of right shoulder impingement, diabetes with retinopathy, hypertension, osteoporosis, a history of right hip fracture, and status post cardiac catheterization and stenting. (TR 14). At step three, the ALJ found that Plaintiff's medically determinable impairments did not meet or equal the requirements of an impairment deemed disabling *per se* under the agency's Listing of Impairments. At step four, the ALJ found that Plaintiff had the residual functional capacity

("RFC") to perform work at the light exertional level[2] with restrictions: "She can lift and/or carry and push and/or pull . . . ten pounds frequently and twenty pounds occasionally. She can stand and/or walk for thirty minutes at a time for a total of four hours in a workday. She can sit for an hour at a time for a total of six hours in a workday. She can kneel, crouch, stoop, climb, and crawl occasionally. She cannot work at unprotected heights or around hazards. She cannot reach overhead more than infrequently (ten percent or less)." (TR 16). Based on this RFC and the testimony of the VE, the ALJ found that Plaintiff was capable of performing her previous jobs as an administrative assistant, secretary, paralegal, accounting clerk, receptionist, and general office clerk. (TR 18). The Appeals Council denied Plaintiff's request for review (TR 1-3), and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 404.981, Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as

---

[2]Light work is defined as work involving lifting objects weighing up to 20 pounds at a time, frequently lifting or carrying objects weighing up to 10 pounds, and mostly walking or standing, or sitting with pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax, 489 F.3d at 1084. The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Step Four - Credibility

Plaintiff first contends that the ALJ did not adequately evaluate her credibility in relation to her assertion of disabling pain. At the fourth step of the evaluation process, the ALJ must determine whether the claimant retains the RFC to perform the requirements of all past relevant work. The claimant bears the burden of proving an inability to perform the duties of his or her past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993). The assessment of a claimant's RFC generally requires the ALJ to consider the claimant's credibility and "make a finding about the credibility of the [claimant's] statements about [her] symptom(s) and [their] functional effects." Social Security Ruling 96-7p, 1996 WL 374186, at * 1 (1996). "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). Credibility findings must, however, "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and

alteration omitted).

Although Plaintiff contends that the ALJ did not provide reasons for concluding that she was not disabled due to pain, the ALJ's decision includes a thorough credibility analysis. The ALJ reviewed Plaintiff's testimony and discussed several factors that have been recognized as relevant to the credibility evaluation. See Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995)(recognizing factors relevant to the credibility determination include claimant's "medication[s] and [their] effectiveness, extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of [the claimant's] medical contacts, the nature of [the claimant's] daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence"). See also 20 C.F.R. § 404.1529(c)(3)(listing factors relevant to symptoms that may be considered by ALJ). The ALJ determined that Plaintiff's allegation of disabling pain was not consistent with her multiple daily activities and the ALJ noted inconsistencies between her testimony and her reports to her doctors, inconsistencies between her testimony and specific objective medical evidence, and the ALJ's own observations of Plaintiff during the hearing.

Additionally, the ALJ pointed to specific portions of the medical record which reflected that Plaintiff "sought little care for any specific hip problems after early 2008" and that Plaintiff "exhibited normal gait and station" in an examination in March 2010. (TR 14). With respect to her complaints of shoulder pain and limitations, the ALJ also pointed to specific portions of the medical record which showed that she underwent arthroscopic

5

surgery on her right shoulder in October 2008. Her "symptoms improved" following the surgery, and subsequent examination findings were "largely normal." (TR 14). There is substantial evidence in the record, as referenced in the ALJ's decision, to support this reasoning.

Although Plaintiff contends that the ALJ did not indicate why he rejected her testimony concerning her limited ability to stand and walk due to hip and back pain and muscle spasms in her legs, the ALJ recognized that Plaintiff had hip pain but found for several reasons that Plaintiff's pain was not as severe as she stated, including her reports to treating doctors that she played racquetball three times a week, traveled with her husband for his work, walked a mile, and engaged in numerous other activities. The ALJ noted that Plaintiff's failure to describe these activities during the hearing also reduced her credibility.

Plaintiff complains that the ALJ did not adequately discuss her hearing testimony because he did not explain why he believed certain portions of her testimony and why he disbelieved other portions of her testimony. The ALJ, however, indicated the portions of her testimony that he found credible by noting specific inconsistencies between her testimony and other statements she made concerning her usual daily activities and her reports to her treating physicians concerning her activities. The ALJ recognized that Plaintiff "had some pain and symptoms, but no to the extent alleged" (TR 17), and the ALJ's decision includes an adequate discussion of the relevant factors and why Plaintiff's statements were not fully credible to the extent they were not consistent with the ALJ's RFC assessment. See Keyes-Zachary v. Astrue, 695 F.3d 1156, 1170 (10th Cir. 2012)(noting ALJ was not required to

identify specific incredible statements as part of credibility determination where ALJ "performed the essential function of a credibility analysis by indicating to what extent he credited what [claimant] said when determining the limiting effect of her symptoms").

Plaintiff contends that the ALJ misread the record with respect to Plaintiff's ability to walk a mile. The record, however, of this January 2007 office visit to her treating physician, Dr. Henthorn, could be read to indicate Plaintiff had walked a mile but had experienced hip pain and was going to try to gradually increase her walking exercise. (TR 368). The ALJ did not rely solely on this office note, and the ALJ did not err in characterizing the office note in her decision. Although Plaintiff argues that a "significant amount of time" had passed since Plaintiff made the statements to her physicians concerning walking a mile and playing racquetball three times a week, Plaintiff alleged that she became unable to work in March 2006. The ALJ did not err in considering Plaintiff's reports to her physicians during the period of time that she allegedly was disabled. Finally, Plaintiff alleges that she explained during the hearing that her trip to Arkansas was only for one night. (TR 56-57). Plaintiff does not indicate why this out-of-state travel was described very differently by her physician, who noted that Plaintiff reported "she went to Arkansas with her husband because he had to work after the ice storm there." (TR 445). The ALJ did not err in describing the treating physician's statement in the record. Moreover, there is another notation in the record in May 2010 that Plaintiff reported to a treating physician she was "going out of town on work." (TR 779).

The credibility determination is well supported by the record. As the ALJ reasoned,

the record shows on several occasions that Plaintiff's treating physicians noted that she was observed to walk with a balanced and normal gait and that on several occasions treating physicians noted that she was doing well on medications to treat her hip and low back pain. (TR 302, 321, 327, 329, 368, 369, 372, 458). Plaintiff reported in February 2008 to her treating orthopedic specialist that she had stopped using narcotic pain medications and she did not have a lot of pain any longer. (TR 331). She reported to Dr. Maluf in March 2008 that her hip pain was sporadic. (TR 396). The ALJ did not, as Plaintiff suggests, rely only solely on her daily activities to support the credibility finding. Rather, the ALJ relied on several factors and set forth a clear explanation of the reasons for the decision that are well supported by the record. The ALJ's credibility determination should therefore not be disturbed.

IV. Evaluation of Treating Physician's Opinion

Plaintiff contends that the ALJ did not properly evaluate the opinion of Dr. Shadid concerning her functional limitations. Generally, an ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id. The ALJ "must give good reasons ... for the weight assigned to a treating physician's opinion" that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinion and the reason for that weight." Id. (quotations omitted).

Dr. Shadid, an orthopedic specialist, treated Plaintiff for a brief period of time between March 2006 and September 2006. (TR 232-241). Dr. Shadid performed intraarticular steroid injections into her sacroiliac joint which, in his opinion, provided Plaintiff "substantial benefit." (TR 232). On September 18, 2006, Dr. Shadid authored a "Treating Physician's Narrative Report" in which the physician stated that Plaintiff was "capable of only sedentary activity [with the ability to] alternate positions as needed . . . . Patient should avoid heavy lifting, lifting 20 pounds occasionally and 15 frequently." (TR 230).

The ALJ recognized this opinion and explained in the decision that she had given "some weight" to Dr. Shadid's opinion but that Dr. Shadid had not provided "a completed evaluation consistent with specific findings regarding vocational functioning. Further, it appears that Dr. Shadid's definition of 'sedentary' differs from that in Social Security Act and Regulations. Dr. Shadid indicated that the claimant could lift fifteen to twenty pounds, which was consistent with the light [RFC] assessment above." (TR 18).

First, Dr. Shadid did not opine that Plaintiff was unable to work. Rather, the physician indicated Plaintiff would need a "sedentary" job that allowed her to alternate positions and that would not require her to lift more than 15 to 20 pound objects. As the ALJ pointed out, the lifting restrictions Dr. Shadid described fall within the exertional demands of light work, as defined by the agency. Dr. Shadid vaguely stated that "there would be a significant amount of time where she would not be able to work and [sic] eight hour work day" (TR

9

230), but the physician did not indicate whether that period of time preceded his opinion or exactly what period of time would be included. As the ALJ reasoned, Dr. Shadid's treatment records did not provide objective evidence supporting the RFC assessment.

Moreover, the ALJ found that Plaintiff was capable of performing a limited range of light work, consistent with Dr. Shadid's opinion concerning Plaintiff's lifting restrictions and her need to alternate sitting and standing. The ALJ did not err in determining that this opinion was entitled to "some" but not controlling weight.

Effective March 26, 2012, the regulations provide that if an ALJ determines there is insufficient evidence to determine disability the ALJ "may recontact [a] treating physician, psychologist, or other medical source," "request additional existing records" or seek further evidence from another source, including the claimant or a consultative examiner. 20 C.F.R. § 404.1520b. Plaintiff contends that the ALJ should have recontacted Dr. Shadid if he felt his opinion was not adequately explained. However, the ALJ addressed Dr. Shadid's opinion and found that the specific functional limitations set forth in the opinion simply were not adequately supported by Dr. Shadid's treatment notes. There was no need to recontact Dr. Shadid under these circumstances. See Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994)("A treating physician's opinion may be rejected if his conclusions are not supported by specific findings.").

V. Evaluation of Non-Acceptable Medical Source Opinion

Plaintiff contends that the ALJ did not properly evaluate the opinion of her treating physician's assistant ("PA") Ms. Betty Wymer in the office of her treating physician, Dr.

Thomas. The ALJ recognized that PA Wymer had submitted a Medical Source Statement in which she concluded that Plaintiff could perform less than sedentary work. (TR 443-444). The ALJ determined that because PA Wymer was a non-acceptable medical source it was not entitled to controlling weight. See 20 C.F.R. § 404.1513. Further, the ALJ determined that because the opinion was not consistent with the treating notes of the clinic, with the Plaintiff's overall treatment record, or with Plaintiff's statements concerning her daily activities, the statement was accorded "little credibility." (TR 18).

On the Medical Source Statement completed by PA Wymer in July 2008, Ms. Wymer stated that Plaintiff was unable to lift 10 pounds, could not stand or walk for 10 minutes at a time, could not sit for more than 10 minutes at a time, would need to lie down during the workday to manager her symptoms, would never be able to climb, stoop, kneel, crouch, crawl, reach, or finger objects, and was restricted from "all" exposure to heights, machinery, temperature extremes, dust fumes, humidity, and vibrations. (TR 443-444). As the clinical and laboratory findings to support these restrictions, PA Wymer noted only that Plaintiff was taking narcotic, non-steroidal anti-inflammatory, and muscle relaxant medications and that she needed "continued insulin control." (TR 444). The ALJ appropriately reasoned that the severe functional limitations described by PA Wymer were not supported by the clinic's treatment notes, by the objective medical evidence in the record, or by Plaintiff's own reports of her daily activities. Specifically, the clinic's treatment notes reflect that in March 2009 Plaintiff was "doing well." (TR 458). There are no other findings in the clinic's treatment notes that would support the functional restrictions placed on Plaintiff by PA Wymer. (TR

459-462). In April 2009 Plaintiff reported her medications were "working very well" and that she was seeing an endocrinologist for treatment of her diabetic condition. (TR 457). The ALJ did not err in ascribing "little" weight to PA Wymer's opinion.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before May 14th, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   24th   day of   April  , 2013.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE